AO 106 (Rev. 06/09)   Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the
Eastern District of Missouri

**FILED**

**MAR − 6 2019**

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| In the Matter of the Search of<br>**4439 Cote Brilliante Avenue, St. Louis, Missouri 63114**, (hereinafter "**subject location**") which is more fully described as a single-story, single-family residential building with red brick exterior with a white-framed front door and windows, and a grey-shingled roof with a covered concrete front porch and a second concrete porch located on the east side of the building. The building is located on the north side of Cote Brilliante Avenue. The address numbers "4439" are visible on the left front door when facing the front of the residence. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 4:19 MJ 1076 JMB |

## APPLICATION FOR A SEARCH WARRANT

I,  _____William A. Meyers_____ , a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

**4439 Cote Brilliante Avenue, St. Louis, Missouri 63114 (Exhibit A)**

located in the  _____EASTERN_____  District of  _____MISSOURI_____ , there is now concealed
see attached LIST (Exhibit B).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
  ✓ evidence of a crime;
  ✓ contraband, fruits of crime, or other items illegally possessed;
  ✓ property designed for use, intended for use, or used in committing a crime;
  ❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C., §§ 846, 841(a)(1) | Conspiracy to possess with intent to distribute controlled substance(s) |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

  ✓  Continued on the attached sheet.
  ❑  Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

William A. Meyers, Special Agent
Federal Bureau of Investigation
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  _____3/6/19_____

*Judge's signature*

City and State:   St. Louis, MO

Honorable John M. Bodenhausen, U.S. Magistrate Judge
*Printed name and title*

AUSA:   Jeannette S. Graviss

FILED

MAR − 6 2019

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

**AFFIDAVIT**

1.      I, William A. Meyers, a Special Agent of the Federal Bureau of Investigation (FBI), United States Department of Justice, and have been employed as such for twelve years. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and I am empowered by law to conduct investigations of and to make arrests for the offenses enumerated in Title 18, United States Code, Section 2516.

2.      Prior to becoming a Special Agent with the FBI, I was a police officer with the Downers Grove (Illinois) Police Department for approximately six years. I am currently assigned to a squad responsible for the investigation of drug trafficking, crimes of violence, and violent street gangs. Through my training and experience, I am familiar with the debriefing of cooperating witnesses and/or other sources of information and methods of searching locations where illegal drugs, firearms, instruments of money laundering, and evidence of other crimes may be found. I have been trained in and have experience conducting surveillance of drug traffickers. I am also familiar with the methods used to import illegal drugs and firearms. I have also interviewed persons involved in violations of federal law pertaining to firearms and drug trafficking.

3.      Information in this affidavit is based upon my own investigation and that of several experienced law enforcement investigators with whom I am working. The statements contained in this affidavit are based in part on information and written reports provided by other law enforcement investigators; information gathered from the service of subpoenas; the result of searches, seizures, and surveillance conducted by FBI, and/or other law enforcement agencies; telephone toll records and pen register information;

consensually recorded telephone calls; information gathered from cooperating witnesses; and on my experience and background and the experience and background of other law enforcement officers. As part of the investigation described in this affidavit, I have reviewed public and law enforcement records and talked with or reviewed reports of other law enforcement investigators.

4.     This affidavit is in support of an application for a search warrant to search:

**4439 Cote Brilliante Avenue, St. Louis, Missouri 63114,** which is more fully described as a single-story, single-family residential building with red brick exterior with a white-framed front door and windows, and a grey-shingled roof with a covered concrete front porch and a second concrete porch located on the east side of the building. The building is located on the north side of Cote Brilliante Avenue. The address numbers "4439" are visible on the left front door when facing the front of the residence. A copy of a photograph of said property is attached hereto and marked as, "Exhibit A" incorporated herein by reference.

5.     There is probable cause to believe that this property contains evidence of violations of Title 21, United States Code, Section 841(a)(1), possession with the intent to distribute narcotics, and Title 21, United States Code, Section 846, conspiracy to possess with the intent to distribute narcotics. Because this affidavit is being submitted for the limited purpose of securing a search warrant for the **subject location**, it does not contain all of the information known to investigators. Rather, it contains only those facts that I believe necessary to establish probable cause to search the **subject location.**

6.     Beginning in October, 2018, the FBI began investigating a group of individuals who were selling phencyclidine (PCP), cocaine base, and fentanyl in and around the Ville Neighborhood in the City of St. Louis. The **subject location** is located in the Ville Neighborhood. While most of the drug sales have been occurring in the 4200

block of Cote Brilliante, investigators believe the **subject location** has been used to store weapons larger quantities of narcotics.

### Confidential Source Information

7.     In January, 2019, investigators spoke with a confidential source (CS) who advised that he/she was born and raised in St. Louis and grew up in the Ville The CS said that he/she has been purchasing PCP from individuals in the 4200 block of Cote Brilliante. The CS said that many of the individuals selling PCP in that area are members of the North Market Gangsters and that they are responsible for a number of shootings in the area.  The information provided by the CS has been corroborated by two additional confidential sources and by controlled buys that have been conducted on Cote Brilliante in October and November of 2018.  Additionally, several individuals have been arrested in possession of PCP in the 4200-4400 blocks Cote Brilliante during 2018.

8.     The CS is a convicted felon and has prior arrests for theft, stealing a motor vehicle, delivery of a controlled substance, robbery, and trespassing.  The information provided by the CS has been deemed accurate and reliable.  Additionally, the CS is receiving financial compensation in exchange for his/her assistance.

9.     Because the CS grew up in the neighborhood and has been consistently purchasing PCP from North Market Gang members, the CS has earned the trust of the group.  The CS has been able to obtain information regarding acts of violence involving the gang and information regarding how the North Market Gangsters members are distributing PCP, cocaine base, and fentanyl.

10.     The CS said that around September or October, 2018, a feud began between members of the North Market Gangsters and members of the JVL street gang.  Since that

time there have been back and forth shootings between the two groups. In October, 2018, investigators placed a pole camera in the 4200 block of Cote Brilliante and a number of these shootings have been caught on camera, further corroborating the information provided by the CS.

11.     The CS said that on or about January 25, 2018, a JVL gang member, "Hustle" drove onto the 4200 block of Cote Brilliante. He told the CS that he wanted to end the conflict between the North Market Gangsters and the JVLs. The CS said that North Market Gangster member DANIEL MARTIN, exited a residence at 4200 Cote Brilliante with an older man and fired several rounds at "Hustle" who sped off in his vehicle. DANIEL MARTIN looked at the CS and said, "That's how we do it."

12.     On January 28, 2019, the CS was inside MARLON MITCHELL'S house at 4428 Aldine. DEJA SHELTON and "DONNIE BEAM" were also there. They were discussing the supply of PCP. MITCHELL said that he was getting supplied by a Puerto Rican in Kansas City. The CS believes that MITCHELL then supplied DEJA SHELTON, "DONNIE BEAM," and others with PCP.

12.     On February 11, 2019, the CS was utilized by the FBI's Safe Streets Gang Task Force to conduct a controlled purchase of PCP from "DONNIE BEAM". Investigators gave the CS $200 in U.S. currency and an audio recording device. The CS called "DONNIE BEAM" who directed him to meet him on Dr. Martin Luther King Avenue near Cora. CS called "DONNIE BEAM" again and "DONNIE BEAM" said he was on his way and they could meet near North Market and Billups Avenue.

13.     An undercover officer (UC) dropped the CS off and the CS walked toward North Market Street and Annie Malone Drive. A blue Acura SUV pulled alongside the CS

and the CS walked up to the driver's window.  BERNARD DORRIS was driving and DONJA MOORE, "DONNIE BEAM" and DEJA SHELTON were passengers in the SUV. The CS reached across DORRIS and handed the money to SHELTON. "DONNIE BEAM" handed a small bottle to SHELTON who handed the bottle of PCP to the CS.

14.     The CS said that on February 20, 2018 he/she was walking near the 4200 block of Cote Brilliante when a gold Cadillac SUV pulled alongside him/her. TRAMIEN MCGREW was inside and showed the CS a clear bottle of liquid that appeared to contain approximately five ounces of PCP. MCGREW provided the CS with his cell phone number and offered to sell the CS crack cocaine.

15.     The CS said that on February 23, 2019, he/she was walking in the 4400 block of Cote Brilliante Avenue when he/she saw the same blue Acura SUV as was used in the controlled buy on February 11, 2019.  As the Acura passes, it slowed down, and the CS went to talk to the occupants.  The CS said that BERNARD DORRIS, was driving the SUV, and DEJA SHELTON and MARIO MITCHELL[1] (a juvenile member of the North Market Gangsters who sells PCP for the group) were passengers.  The CS saw at least three firearms inside the vehicle.  The CS observed BERNARD DORRIS, DEJA SHELTON, and MARIO MITCHELL get out of the SUV and enter the **subject location.**  The CS believes that the **subject location** is being used to store firearms and larger quantities of PCP.

16.     On February 27, 2019, the CS was used to conduct a controlled purchase of PCP from TRAMIEN MCGREW.  The CS called MCGREW at the number MCGREW

---

[1] On January 26, 2019, MARLON MITCHELL (who supplies PCP to the North Market Gangsters) called the CS.  MITCHELL said that MARIO MITCHELL (juvenile) had gone out of town to pick up PCP but had returned and that he was five ounces short.

5

had provided to the CS on February 20, 2019. MCGREW agreed to meet with the CS and directed him/her to the 4200 block of Cote Brilliante Avenue. The CS was provided with an audio/video recording device and $100 in U.S. currency to be used to purchase narcotics.

17.     In anticipation of the purchase of PCP, investigators began surveillance in the area. Prior to the CS placing the call to MCGREW, investigators observed MCGREW sitting on the porch of the **subject location.** MCGREW was wearing rubber gloves. Individuals involved in the distribution of narcotics often wear gloves in order to protect themselves from the drugs and the harsh chemicals often used to cut the drugs. Investigators observed MCGREW go inside the **subject location.**

18.     After the CS placed the call to MCGREW, investigators observed MCGREW exit the **subject location** still wearing gloves. MCGREW traveled east from the **subject location** to the 4200 block of Cote Brilliante. MCGREW stood outside a vacant building in the 4200 block of Cote Brilliante.

19.     An undercover detective drove the CS to the 4200 block of Cote Brillante and the CS walked west on Cote Brilliante. The CS met with MCGREW and MARQUIS DAVIS. The CS watched MCGREW conduct a hand-to-hand transaction with the occupants of a silver Chrysler 300 sedan that pulled up next to MCGREW. After that transaction, MCGREW conducted a hand-to-hand transaction with the CS. The CS walked south on Billups to the undercover detective's car. The CS provided investigators with a small clear plastic bottle containing PCP.

20.     Investigators believe that MCGREW is storing PCP inside the **subject location** and that he directed the CS and others to the 4200 block of Cote Brilliante in order to conceal the fact that the larger quantity of PCP was being stored inside the **subject**

**location.** The fact that MCGREW was wearing rubber gloves suggests that he was packaging narcotics inside the **subject location** prior to conducting the drug transaction with the CS.

21.    Additionally, the CS had seen BERNARD DORRIS, DEJA SHELTON, and MARIO MITCHELL enter the **subject location** on February 23, 2019 after seeing them in the possession of firearms. BERNARD DORRIS, DEJA SHELTON, "DONNIE BEAM," and DONJA MOORE delivered PCP to the CS on February 11, 2019. The CS said that all of these individuals are involved in the distribution of narcotics in the 4200 block of Cote Brilliante and other locations around the Ville.

22.    TRAMIEN MCGREW, BERNARD DORRIS, DEJA SHELTON, MARIO MITCHELL and others involved in an ongoing, continuing drug trafficking conspiracy that has been occurring over a period of time. I know that, because TRAMIEN MCGREW, BERNARD DORRIS, DEJA SHELTON, MARIO MITCHELL have been consistently engaged in the trafficking of narcotics, there is a likelihood they would keep evidence of their crimes at the **subject location.** Especially, in light of the fact that TRAMIEN MCGREW was seen entering the **subject location** just before engaging in a drug transaction.

23.    During the course of this investigation, I have learned that larger quantities of PCP are not maintained in the 4200 block of Cote Brilliante, and that members of the conspiracy to distribute PCP do not often maintain large quantities on their persons. TRAMIEN MCGREW's actions on February 27, 2018 are consistent with the storage of drugs inside the **subject location** and carrying a smaller quantity of drugs to distribute well away from the **subject location.**

24.     Additionally, I would expect that MCGREW would not keep large sums of money on his person and that the proceeds from the drug sales would be delivered back to the **subject location.** The fact that BERNARD DORRIS, DEJA SHELTON, and MARIO MITCHELL also entered the **subject location** four days before the transaction with MCGREW would suggest that the **subject location** is being used by multiple members of the drug trafficking organization.

25.     I have had extensive experience, as have other members of the investigating team, in interviewing defendants, witnesses, informants and others who have experience in the gathering, spending, converting, transporting, distributing and concealing of proceeds of narcotics trafficking. Based upon my and the investigating team's experience and our participation in other pending and completed controlled substances and/or financial investigations involving ongoing, extensive distribution conspiracies involving large amounts of controlled substances and money, I know the following:

a.     It is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in their residence or other buildings under their control. It is also common for these records to be maintained over a period of time.

b.     Drug traffickers frequently keep near at hand, in their residence or other buildings under their control, paraphernalia for packaging, cutting, weighing and distributing of drugs. These paraphernalia include, but are not limited to scales, plastic bags, and cutting agents.

c.     Drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, computer hard drives and disk records, money orders and other papers relating to the transportation, ordering, sale and distribution of controlled substances. Drug traffickers

commonly "front" (provide drugs on consignment) controlled substance(s) to their clients. The aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the drug traffickers have ready access to them, specifically in their residence or in other buildings under their control. It is common for these records to be maintained for a substantial period after the transactions have taken place.

   d. Drug traffickers commonly maintain telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service; cellular and/or landline telephones; digital and/or alphanumeric text (two-way) pagers; computers capable of e-mail and/or chat-room communication, answering machines; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association in fact with  persons known to traffic in controlled substances or to facilitate such trafficking. These records are maintained where drug traffickers have ready access to them, specifically, in their residence or in other buildings under their control.

   e. Drug traffickers take or cause to be taken photographs of them, their associates, their property and their product. These traffickers frequently maintain these photographs in their residence or other buildings under their control. It is common for these photographs to be kept indefinitely, even over the course of years.

   f. Persons involved in large-scale drug trafficking conceal in their residence or other buildings under their control large amounts of currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the

9

distribution of controlled substances or which are proceeds from the distribution of controlled substances.

      g.   When drug traffickers amass large proceeds from the sale of drugs that the drug traffickers attempt to legitimize these profits.  I know that to accomplish these goals, drug traffickers utilize financial institutions, including but not limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts.  They maintain record of these transactions in their residence or other buildings under their control.  This evidence is of the type that will remain on the premises for some time after the drug transactions have been completed.

      h.   The State of Missouri is not a major distribution point for drugs within the United States.  It is common for drug traffickers to travel to major distribution centers, such as Kansas City, Missouri to purchase drugs and/or to arrange for its distribution elsewhere in the United States.  After purchasing drugs, these drug traffickers will transport or cause to be transported, drugs to the areas in which they will distribute the drugs.  The methods of transportation include, but are not limited to, commercial airlines, private airlines, rental automobiles, private automobiles, and government and contract mail carriers.  Records of their travel are frequently kept in their residence or other buildings under their control.

      i.   Evidence of occupancy and residence including, but not limited to utility and telephone bills, canceled envelopes, rental or lease agreements, and keys, is relevant evidence in narcotics prosecutions.

j. Drug traffickers frequently possess firearms and/or other weapons in their residence or other buildings under their control to protect their controlled substance(s) and/or currency.

k. Individuals involved in the transfer of stolen property often keep records regarding the title work for such property, parts that are used to conceal the title, records regarding the money put into the stolen property and records regarding payment for the property or receipts from the sale of the property.

26.    Based upon the investigation by your affiant and other law enforcement officers, I believe that controlled substances, drug proceeds, and/or documents and electronic records evidencing participation in drug trafficking will be found at the **subject location**.

27.    Based on the facts as construed by my training and experience and the training and experience of the investigative team, presented in the affidavit set forth, I have probable cause to believe that evidence as set forth in Exhibit B, the attached list, of the drug trafficking organization is contained within the **subject location**.


_____
William Meyers
Special Agent
Federal Bureau of Investigation


SUBSCRIBED and SWORN to before me this _____ day of March, 2019, at St. Louis, Missouri.


_____
JOHN M. BODENHAUSEN
United States Magistrate Judge
Eastern District of Missouri

11

**Exhibit A**



4439 Cote Brilliante Avenue, St. Louis, MO 63113

**Exhibit B**

1.      Controlled Substances;

2.      Paraphernalia for packaging, cutting, weighing and distributing controlled substances, including, but not limited to, scales, baggies and spoons; and

3.      Books, records, receipts, notes, ledgers, computer hard-drives and disk records, and other papers relating to the transportation, ordering, purchasing and distribution of controlled substances and/or firearms;

4.      Telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service; cellular and/or landline telephones; digital and/or alphanumeric text (two-way) pagers; computers capable of e-mail and/or chat-room communication, answering machines; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association with persons known to traffic in controlled substances or to facilitate such trafficking.

5.      Photographs, in particular photographs of co-conspirators, of assets, and/or of controlled substances.

6.      United States Currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are proceeds from the distribution of controlled substances;

7.      Books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

8.      Papers, tickets, notes, schedules, receipts and other items relating to travel, including, but not limited to, travel to and from St. Louis, Missouri and elsewhere

9.      Indicia of occupancy, residency, rental and/or ownership of the vehicles and/or premises described above, including, but not limited to, utility and telephone bills, cancelled envelopes, rental or lease agreements and keys;

10.     Firearms and/or weapons.